Good morning, Your Honors. May it please the Court, my name is Bob Dunn. I'm here with my partner Susan Nelson on behalf of the Chisms, the appellants in this case. We'd like to reserve four minutes for rebuttal, Your Honor. The trial court declined to make a determination as a matter of law whether there was probable cause to support the arrest and the search that are at issue in this case. Instead, the court relied on its interpretation of this court's opinion, U.S. v. Gord, to conclude that there was no clearly established federal law to render unreasonable the belief of the Washington State Patrol officers Gardner and Sager that they had probable cause to seek the arrest and the search warrant specifically against Todd Chism. You'll recall that the Gord case was a two-to-one decision originally. It was heard in bonk. It was decided, wasn't decided unanimously. That decision was a suppression of evidence case and it involved a situation where there were over a hundred photographs that were found in the private computer of Mr. Gord in his house. Unlike any of the facts that are at issue here, there was no evidence found whatsoever in the possession of Mr. and Mrs. Chism in their homes and no evidence whatsoever found in the computers that were searched and taken from their home as well. In Gord, there was a website that was attributable to child pornography. It was called Lolita Girls and the evidence in the Gord case was that Gord himself had submitted a application to Lolita Girls giving his home address, his full name, identified the bank card to which he agreed that $19.95 worth of monthly service charges would be attributable to. And more importantly, the FBI found in Gord that in fact his email address, the email address that he was frequenting the site with, matched up his home address. You'll find that there are no facts like that in this case whatsoever. The facts in this case were that the Chisms determined that sometime in the early summer 2007, they had bank card charges that were fraudulent. They called their bank, Bank of America. They reported the fraudulent usage of their account. In response, the Bank of America sent out a fraud letter. It was August 19th, 2007, telling the Chisms that a new account had been started on their behalf. When did the officers learn of those facts? When? Yes. They learned of those facts on the day that they arrested Mr. Chism, put him in interrogation. He said, why am I here? This must be a mistake. You know that my bank card was stolen. We reported it stolen. At the same time, State Patrol officers were in the Chism home interrogating Mrs. Chism, and she said the same thing. And while she's telling the officers that there's a mistake here, our card was stolen, one of the officers found the Bank of America fraud letter. What did the officers do to learn of, to make inquiry, or did they make inquiry about? Here's what they did, Judge. Gardner says that she called the Bank of America. There's a handwritten note from Gardner in the file that says she talked to somebody named Jessica. In her deposition, she doesn't know who Jessica was. They weren't able to find her in any circumstance or time after this purported phone call. She said Jessica said there was a report that the card was lost, but no report of fraud. And then after that, Gardner says, okay, well, send me the bank card statements for the time frame that we're talking about, May and June 2007. So this Jessica person sends the bank card statements, but here's the problem. The state didn't ask for the entire bank card file. They didn't get the fraud department from the Bank of America, and they would have got this letter that had been sent five months earlier. And that's the totality of what Gardner did in terms of running down the Bank of America statement. Does the affidavit include any, affidavit in support of the search warrant, does that include any information at all about the fact that the card was stolen? None. Zero. And the point that we make in our briefing is that the affidavit is replete with omissions and misstatements. And one of the problems with this case as compared to the Gord case that the trial court relied on was, in this case, there wasn't a website that was dedicated to child pornography. What happened, and it's supported by the NETMEC statement that was intercepted by the authorities and passed on down to the Washington State Patrol, the NETMEC statement said this is a host site. It's like you and I renting a mailbox and someone's sending pornography into the mailbox. Well, that's what happened with respect to the Chisholm's bank card. Someone used it to rent a mailbox. And the images that are issued in this case were uploaded to the mailbox. But at no time did the State Patrol ever identify that the mailbox had any nexus or connection to the Chisholm's. The IP address that they ran down, ultimately through subpoenas, ended up identifying people in Walla Walla and Federal Way, completely separate apart from the Chisholm's. Unlike the Gord case, they had no IP address. They had no connection between the Chisholm's and the pornography that was at issue. And the only thing that they had was this bank card statement. And when I asked Gardner in her deposition, what did you do to identify who is responsible for the purchase on the bank card statement? And we all get them. And I said, can you tell me who made this purchase? No. Can you tell me who actually made the purchase for the service fees that bought the host site? She said no. She didn't know whether it was Nicole Chisholm or Mr. Chisholm or a babysitter or the Chisholm's She's saying that porn was purchased and it was purchased by Mr. Chisholm and she had no evidence whatsoever of that and still has none today. What other facts, Mr. Dunn, do you think material facts were omitted or not included in the affidavit that might have made a difference in the magistrate judge's assessment? All right. Judge, they didn't disclose to the magistrate that it was unknown when these images were uploaded to a host site. They didn't identify it was a host site. They identified it as a porn site. They misrepresented that the materials were purchased. There was never any purchase of pornography in this case. Are you saying the website that was maintained or at least paid for by the Chisholm credit card didn't contain child porn? I thought the district court said it did contain child porn. No, ma'am. What the service fees went to was just to set aside the mailbox. And did the mailbox contain child porn? I thought that's what the district court found. Look, it just set up the mailbox. Later, the material was uploaded into the mailbox. But the payments that continued over a couple of months were for a website that had child porn. Is that correct? That's what the district court said. Was that erroneous? I think it confuses the way the internet works. The service fees went to buy the mailbox. The mailbox ultimately ended up with child porn being sent to it by some unknown person. And the payments for the website included whoever, some mysterious person, put the porn into the website, correct? In other words, absent maintaining a website and paying for it, there'd be no place for those letters to go. I think that's correct. There would be no mailbox. And so, getting back to your question, Your Honor, the information didn't identify that charter communications had learned that, in fact, the IP address had been assigned to somebody in Walla Walla. There were two cybernet reports. They used both of them in the affidavit. They didn't identify to the magistrate. Oh, by the way, we've identified this IP site, but it doesn't hook up with the Chisholm's. It hooks up to somebody in Federal Way. So, you have a Walla Walla address. You have a Federal Way address. And then no connecting addresses to the Chisholm's. Didn't they say that that was because their explanation was that, or at least the government argues that, at the time when it was registered, there wouldn't have been a connection. I'm not sure I understand that entirely. But then they go on to say that there were user accounts that were accessing the website that were associated to the name Nicole Chisholm, though other information was wrong. So, there was another link between the accessing the website and the name Chisholm, correct? In order to set up a mailbox, certain information had to be stolen, the bank card, identified Mr. Nicole Chisholm, and identified that person as being the link in order to attribute the bank card, the bank card itself, to. Now, with respect to the other omissions, none of this was told to the magistrate. The magistrate had all of this in a vacuum. The magistrate was asking for an IP address. An IP address, essentially, is if you have a computer and you're making a contact out into the Internet, they can route that back to you and route it to an address physically where the computer's at. They never told the magistrate any of that. Can you address why plaintiffs didn't raise the falsehood argument? I thought there was an omission argument raised to the District Court in the summary judgment motion, but I didn't see anything suggesting that there were misstatements in the affidavit, just that there were omissions. Why wasn't that raised to the District Court? Well, it wasn't raised as well as I would now like it to have been raised. And it wasn't raised as being utilized by the person who set this up. At first, everyone just assumed, under the knick-knack, that, in fact, this was a pornographic site. It wasn't a pornographic site. And after the argument, we started going back and looking at the arguments that we needed to make in here and realized that it was a host site and that, in fact, the host site was not one that had pornography in it. It was one that was uploaded. It was never downloaded. And, in fact, the affidavit that was submitted by the State Patrol identifies downloading. So it wasn't until after your argument before the District Court that you realized that there was some error in the language. Is that correct? Only in the uploading-downloading business. I guess my question just was, you now say these things are material misstatements or misrepresentations, knowing misrepresentations, and yet it was puzzling to me why, if they were so obvious or material, why it wasn't raised to the District Court. They're only material, Your Honor, the uploading-downloading business, to illustrate and highlight the fact that this was not a pornographic site. There couldn't be any material purchased from this site. I guess I don't see the distinction. I mean, it's a website that contained pornographic images. Why isn't that a pornographic site? Maybe the mailbox, there's nothing in it. You expect it's going to receive U.S. mail and it's going to be legitimate U.S. mail. And then all of a sudden, someone starts sending you pornographic material. The mailbox wasn't rented pornographic. Someone unknown, as in this case, sent the pornography to you. Well, but they found, I mean, it was undisputed that there were pornographic images in a website that was being maintained by the Chisholm's credit card. So I guess I'm not seeing how that makes it different from Gord. Well, in Gord, they had all the connecting dots. In Gord, the FBI found that, in fact, Gord did all these active things to contact the website directly. The State here had none of that. And, in fact, the FBI found that in Gord, they could put an IP site, his computer, in contact with the pornographic site. That's the difference. Is 135? You can save it for rebuttal. Was that to answer Judge Kuda's question? I hope so. I hope so. Thank you. Did you want to save it for rebuttal? Save that for rebuttal. I do. Thank you very much. You have the clock wrong. Okay. Thank you, Your Honor. May it please the court, counsel? There's two points I really want to address on oral argument, and I want to focus on the Saussure test for qualified immunity. The two points under Saussure, really, whether or not a constitutional violation occurred, and if a court had found that a constitutional violation occurred, was there a clear case law or clear law that would have counseled an officer in Gardner's position that she shouldn't be pursuing the warrant she was pursuing? But before I do that, I think I need to clear up a misconception that's developing with regard to the website that was being paid for through the Chisholm's credit card. The website is not the mailbox. There's a mailbox associated with this. When one goes to Yahoo and registers as a subscriber, you get an email address. That's your website. Then what happened in this case is that subscriber information ended up becoming the user who opens up the Flickr account on Yahoo, which is, in particular, a website, not a mailbox. So there's been a suggestion by counsel that somebody's anonymously sending these emails, and the pictures are automatically appearing in a mailbox. That's not what the case is based on. What the case is based on is the pictures that were appearing on the actual website. And if there's any question about whether or not it was a website, you really don't need to look any farther than Detective Gardner's affidavit for the warrant, and it's SCR 168, where she's listing out that these are HTTP websites. That's not a mailbox for an HTTP website. So you're saying nobody could send an email, like I get emails in my email account, nobody could send an email of pornographic images to the websites that were being maintained with the credit card. Is that right? There's no evidence to suggest that that's what happened or that could happen. These are Flickr accounts that were being investigated. When the National Center for Missing and Exploited Children ended up getting the referral from Yahoo, Yahoo was archiving and shutting down websites. They also shut down the associated email accounts with those websites. But there's two different faculties or facilities that are going on here, and I want to make sure that's clear, because should the court go on and have labor under the impression that, oh, this was something that was emailed to somebody's inbox and none of us can actually go through and set up specific rules, that's not the case. What was investigated was a website. So I was a little confused. So there were these two, are those email addresses that were associated with the Nicole Chisholm name, and then they had accessed a website that was being maintained with the Chisholm credit card? Do I have that right or am I technically wrong on that? No, you have it right. Essentially the process, and again this is supported by the record, the process for it is you go to Yahoo, to their website, and you have to register as a subscriber. And as part of that process they give you a Yahoo email address at which somebody could email you. That subscriber, which was listed as Nicole Chisholm for the two different websites that were found to contain porn, opened up those Flickr accounts or websites where other people could go and view images that were contained on those websites. Okay. So that's the process for it. And can you just clarify about what the police knew or the investigators knew about the credit card and its status as being stolen or not? Certainly. In August of 2007, Detective Gardner was instructed by Sergeant Sager to find out whether or not there was issues with regard to identity theft. She contacts another detective, Detective Dave Startup. He's with the Washington State Patrol Identity Theft Unit. And he says, based upon the credit card number you have associated with this, you need to contact Bank of America. He emails his contact at the Bank of America and copies Detective Gardner essentially saying, hey, who are we supposed to call here to find out what's going on with this? Detective Startup in his email specifically mentions the possibility of fraud or they're referred to Jessica and they're given a specific phone number. Call this number. That's the number the Detective Gardner calls. And when she calls, she speaks with Jessica. Jessica tells her that there was a lost card. Now there's another fine point that could get lost in the briefing that really needs to get flushed out. Jessica doesn't say the 6907 card number, the one that's ultimately associated with the purchases of the domain space or the website, was lost. That's not what she's told and that's not what Detective Gardner swears to in her declaration supporting our motion. What she's told is that their card was reported lost in 06 and this was the new number that was issued. So there's no allegation and no report from Jessica that there's been any fraud on the card at this point. And it's with that understanding that Detective Gardner continues forward in her investigation and then formally requests copies of the bank statements from the Chisholm's account. So based upon that, Detective Gardner, when she goes in to ask for her search warrant and her arrest warrant, she has no idea there's been fraud. In fact, she's been affirmatively told of an absence of fraud by Jessica. These are uncontested facts. I know the plaintiff would like to create an inference, and I say plaintiff, I guess I should be saying the appellant in this case, wants to create this inference that, well, are we to believe her or are we not to believe her? There's nothing to contest what she says. She's produced her contemporaneous notes from August when she spoke with Jessica. There's no reason not to believe her. Now, later in the case, once Mr. Chisholm's arrested and the arrest warrant has been served and they're conducting the search of the home, they discover that there have been reports of fraud. Our position is it wouldn't matter in terms of the warrant if she had known earlier. The key point is she didn't know earlier, and that's part of the good faith exception. But it wasn't until after all of this that any reports of fraud for the 6907 number were ever made. Can I ask you about the affidavit as I read through it? One of the statements which seemed key and was troubling was a credit card number was also included. It says, this is the card the suspect used to purchase the images of child pornography from the website, and then it lists the F-O-E-L-O-N website. But in fact, the credit card didn't purchase the images of child pornography, right? It paid to maintain the website. So this certainly seems to be in the statement. I understand that the appellant didn't really challenge it before the district court. But I guess my questions are, what do we make of this information which appears not to be correct in light of the appellant not raising it? It's certainly inartful. And as the court's pointing out, the fact that they didn't raise it below means that they waived the argument. Even if they hadn't waived the argument, it's not material to the decision that the court needs to make today. And my explanation of this is going to highlight why these issues should be raised before the district court. The plaintiffs are, I'm sorry, the appellants are focusing their issue on whether or not there was a download. And in order for the court to believe there was a download, that means that that's how you attach the possession argument. And that's the criminal violation. Well, that's what she said in her affidavit, wasn't it, that Chisholm downloaded? She did say that. That's what she told the magistrate judge. She did say that in the affidavit. That's clearly a misstatement. It is a misstatement, Your Honor. And the reason that the misstatement and what should have been flushed out before the district court isn't material is because the three crimes for which Mr. Chisholm was being accused or for which they were pursuing a search warrant and an arrest warrant include not just the possession, but they also include financing of any child pornography, distributing any child pornography, republishing or publishing any child pornography. In the briefing that's been submitted to this court, the focus has really only been, at least at this point, on 070, and that's 968A-070. But if you take a look at the warrant that was actually issued, there's three different crimes that are listed there under which the judge was issuing the warrant. One was 968A-050. That's the statute that specifically makes it illegal to publish, disseminate, finance a visual matter that depicts a minor engaged in an act of sexually explicit conduct. The other statute, 060, refers to causing to be sent or sending those types of same images. So when Detective Gardner puts in her affidavit, the association she's made through the Gord case, the three-prong analysis that this court and Bonk has already approved as a fine and a probable cause, one, that there's child porn, two, that there's these payments associated with the website for child pornography. Try as they might, the appellants want to say there's a difference between being a subscriber to an official commercial site and the payments that were made using the Chisholm's credit card. But there isn't. The evidence is the same. In the Gord case, what they focused on was the information they received from Lancelot, which was the provider or the, I guess I should say provider, who handled the payments for the Lolita Girls website. That's really what we see here through the financial information that was This is a long-winded way of saying that there's still probable cause or the indicia of probable cause within the affidavit for any one of the three crimes for which the affidavit, the arrest warrant, and the search warrant were issued. And that information about the payments from the Chisholm's credit card, and it would have been three payments over a two-month period to two different sites that had child pornography on it. It's the same as the payments in Gord. That really takes me back to where I wanted to start, which was the saucier analysis. In this case, under the Gord decision, again, that I mentioned was en banc from the Ninth Circuit, we have the three prongs that we determine whether or not there's a constitutional violation here. It's a shortcut that I just took. I should probably explain the saucier decision was pretty clear in providing guidance to courts below that you really have to define the constitutional violation within the context of the specific behaviors that are going on. The best example of that is this court's Gord decision. In that, there was the triad of three facts. First, child pornography on a website. There's no debate here. There was child pornography on these websites, on the two websites, and that hasn't been a focus of any dispute. The second is the payments associated. Is there enough? If we took out the statements about the card was used to purchase images of child pornography, which is not correct, and about the images downloaded by Todd Chisholm, which is not correct, is there enough to support the finance prong? There is, because Detective Gardner goes through in her affidavit, and I can flip to the actual page. It starts at SER 167 and continues through 169, where she's actually laying out the different facts. I'm sorry, it's 170. If you excise out those other portions, she still has the portion in here where she's relating the charges to the Chisholm's credit card for these two websites. So we still know the three prongs of the Gord test, pornography being on the website, payments associated with access to the website, and then finally, the one issue we haven't really touched on yet, whether or not it's reasonable to believe that that type of information would exist or still be found in the case of a search warrant. Again, I don't think there's much of an issue there either. Following the analysis of Gord, Detective Gardner did the same thing in her affidavit that this court found compelling in Gord. She lays out these are the behaviors of people who are involved in child pornography, especially those who use computers, and there's a likelihood that it's going to continue to exist based upon the nature of how computers work and the behaviors we see from people who deal in child pornography. So what we're asking the court to do today is to affirm the district court's decision on an alternative ground. We're asking the court to make a finding that the warrant submitted by Detective Gardner is supported by probable cause, and make a finding of probable cause based upon the strength of the Gord case. In the alternative that the court decides that there are differences or distinctions, we're asking the court then to find that the law wasn't clearly established, that a reasonable officer could certainly have thought that pursuing this type of warrant would have been reasonable. And again, that's based upon the strength of the Gord case. I think there's a quote I would want to leave the court with, unless there's other specific questions, and it's from the Gord case. What the court said was, here the reasonable inference that Gord had received or downloaded images easily meets the fair probability test. It neither strains logic nor defies common sense to conclude based on the brutality of these circumstances that someone who paid for access for two months to a website that actually purveyed child pornography probably had viewed or downloaded such images onto his computer. Just because this wasn't a commercial site doesn't mean the inferences that were permissible in Gord aren't permissible here. Probable cause requires a fair probability, and that doesn't begin to approach even a preponderance of the evidence. Based upon this, we ask the court to affirm the district court below. Thank you. Thank you. What you didn't hear was any discussion of why they arrested Todd Chisholm on the evidence that they did before they did their search. And they can't explain that. There was no probable cause to identify that it was Mrs. Chisholm, as opposed to Todd Chisholm or their daughter, who purportedly authorized the service fees. And they could have flipped it around. They could have done a knock and inquire, or they could have issued a search warrant. There wasn't exigent circumstances. They could have got the computer. They would have confirmed, in fact, that there was no pornography on the Chisholm's computers, and Mr. Chisholm would not have been arrested. Now, they say that the state of the art, in terms of these investigations, wasn't known. But if you go to Volume 3 of the excerpts and you look at 322, this is materials out of the Washington State Patrol handbook on how to do these investigations on cybercrimes. And they call it the cybercrime getaway car. And they've listed three examples of how criminals use the Internet. And they conclude it by saying this, that much, if not all, of the cyber evidence, the e-mail addresses and the IP addresses used, will lead you to an innocent person. This is Washington State Patrol materials that Gardner was trained with. That's why simply identifying which account was used to commit a crime does not provide you with probable cause to get a search or arrest warrant for the name and address on that account. And what they didn't show in any of the materials, and what the argument didn't provide you this afternoon, or this morning rather, is any connecting dots. There was no information that they were able to identify that an IP address belonging to the Chisholm's was responsible in any form or fashion for the pornography that's at issue in this case. They don't know where it came from. Their investigation has no clue how this material got put into the non-commercial mailbox that we're talking about. I want to leave you with a quote as well. Four days ago, in this district, the latest child pornography case was handed down. It was the case of U.S. v. Krupa. The opinion was authored by Judge Callahan. The dissent was by Judge Berzon. It was a two-to-one decision. It was, again, a criminal case, a motion to suppress. The evidence in that case was a consensual search of a computer. They found one image of a purported teenage girl. The image had the statement, nude teens, on the photograph. The individual who owned the computer revoked his permission to proceed. They got a search warrant and found 22 further photographs  The argument was, by the defendant in that case, you don't have enough. One photograph is not going to do it. And the court basically wrestled with the notion that one photograph is enough, and we found 13 computers and towers in your house, and that led us to believe that we'd find what we ultimately ended up finding. Judge Berzon, she said, The majority seems to imagine probable cause as a cloud that follows people around. This probable cause cloud, the majority imagines, is available for invocation of law enforcement to justify virtually any search. And I believe that's what happened in this case. Instead, to justify a Fourth Amendment search, there must be probable cause to think that contraband or evidence of a crime will be found in a particular place. And she concludes her dissent with this statement. She says, I cannot help but think that had this case involved anything but child pornography, it would come out differently. I fear that understandable abhorrence of this particular crime can infect judicial judgment. We would do well to remember that the protections of the Fourth Amendment do not depend on the nature of the suspected criminal activity any more than they do on the race or gender of the suspect. Thank you. Thank you, Judge. All right. Appreciate the arguments by counsel. The matter will be submitted. Thank you.
judges: Fletcher B. , Paez, Ikuta